AO 91, Rev. 11/82 (T. ZA...........) **CRIMINAL COMPLAINT** # 13-103

| | |
|---|---|
| **United States District Court** | DISTRICT: Eastern District of Pennsylvania |
| UNITED STATES OF AMERICA v. JERON CARTWRIGHT TYREE SCOTT | DOCKET NO. |
| | MAGISTRATE'S CASE NO. 13-1724 |

Complaint for violation of Title 18 United States Code §§ 1951(a), 924(c)(1), 2

| NAME OF JUDGE OR MAGISTRATE | OFFICIAL TITLE | LOCATION |
|---|---|---|
| Honorable LYNNE A. SITARSKI | U.S. Magistrate Judge | Philadelphia, PA |

| DATE OF OFFENSE | PLACE OF OFFENSE | ADDRESS OF ACCUSED (if known) |
|---|---|---|
| October 24, 2013 | Philadelphia, PA | Philadelphia, PA |

COMPLAINANT'S STATEMENT OF FACTS CONSTITUTING THE OFFENSE OR VIOLATION

**Count One**

On or about October 24, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendants JERON CARTWRIGHT AND TYREE SCOTT attempted to obstruct, delay, and affect commerce and the movement of articles and commodities in commerce by robbery, in that, defendants JERON CARTWRIGHT AND TYREE SCOTT unlawfully attempted to take and obtain, and aided and abetted the unlawful attempted taking and obtaining of, property, that is, cocaine, from other persons against their will by means of actual and threatened force, violence, and fear of injury, immediate and future, to their persons and property, that is, by using masks and gloves and loaded firearms, to threaten and control the victims and steal cocaine from them. In violation of Title 18, United States Code Sections 1951(a) and 2.

**Count Two**

On or about October 24, 2013, in Philadelphia, in the Eastern District of Pennsylvania, defendants JERON CARTWRIGHT AND TYREE SCOTT used and carried, and aided and abetted the use and carrying of, firearms, that is, a Taurus Millennium Pro Model PT 140 .40 caliber semiautomatic pistol loaded with ten rounds in the magazine and one round in the chamber, bearing serial number SXG 01718, and a Glock Model 30S .45 caliber semiautomatic pistol loaded with 13 rounds in the magazine and one round in the chamber, bearing serial number ULF 747, during and in relation to a crime of violence, that is, the attempted Hobbs Act robbery, as charged in Count One of this complaint. In violation of Title 18, United States Code Sections 924(c)(1) and 2.

BASIS OF COMPLAINANT'S CHARGE AGAINST THE ACCUSED:

SEE AFFIDAVIT ATTACHED HERETO.

MATERIAL WITNESSES IN RELATION AGAINST THE ACCUSED:

| Being duly sworn, I declare that the foregoing is true and correct to the best of my knowledge. | SIGNATURE OF COMPLAINANT (official title) SARAH O'REILLY |
|---|---|
| | OFFICIAL TITLE: Special Agent, Bureau of Alcohol, Tobacco, Firearms, and Explosives |

Sworn to before me and subscribed in my presence.

| SIGNATURE OF MAGISTRATE (1) Honorable LYNNE A. SITARSKI, United States Magistrate Judge | DATE 10/24/2013 |
|---|---|

1) See Federal Rules of Criminal Procedure rules 3 and 54.

## AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT
## AND ARREST WARRANT

I, Sarah O'Reilly, Special Agent, Bureau of Alcohol, Tobacco, Firearms and Explosives (hereinafter referred to as "ATF"), being duly sworn, state as follows:

1. I am employed as a Special Agent with ATF and have been so employed since 2008. I am currently assigned to the ATF Violent Crime Task Force. The information contained in this affidavit is based on my personal knowledge, information provided to me by other law enforcement personnel and recorded conversations. This affidavit is submitted for the limited purpose of securing a criminal complaint charging Jeron CARTWRIGHT and Tyree SCOTT, with violations Title 18, United States Code, Sections 1951 (attempt and conspiracy to commit robbery which interferes with interstate commerce), 2 (aiding and abetting), 924 (c) (using and carrying a firearm during and in relation to a drug trafficking crime and a crime of violence).

2. The information contained in this affidavit is based upon my personal observations and investigation, on information relayed to me by other special agents or other law enforcement officers working with me, as well as official reports of investigation from law enforcement agencies. Because this application is being submitted for the limited purpose of establishing probable cause to support a criminal complaint and arrest warrant, I have not included every fact known to me concerning this investigation. I have submitted only those facts and circumstances which I believe are necessary to establish probable cause for the issuance of the criminal complaint.

### Probable Cause

3. In August 2013, a confidential source (hereinafter referred to as "CI") provided me with information that led to my investigation of CARTWRIGHT. The CI has been a registered

-1-

confidential informant with ATF since in or around January 2012 and has proven to be reliable in approximately four other investigations. In 2008, the CI was convicted, in the Eastern District of Pennsylvania, of being a felon in possession of a firearm, and sentenced to 30 months imprisonment. The CI's cooperation has been voluntary. Given the CI's criminal history, additional evidence mentioned below corroborates the information that the CI has provided.

4. Since August 2013, the CI has provided me with information that has been corroborated by, among other things, police reports, DMV records, and consensually recorded telephone calls. The meetings and phone calls referenced in paragraphs 9 through 16, set forth below in this affidavit, between the CI, the targets, and the Undercover Agent (hereinafter referred to as "UC") were recorded. I have reviewed those recordings and they corroborate the information that the CI has provided about CARTWRIGHT. In addition, I have corroborated the CI's information through physical surveillance.

5. In and around August 2013, the CI reported to me that a person known to the CI as "V," later identified as CARTWRIGHT, whom the CI has known for approximately two years, approached the CI in mid-August 2013. CARTWRIGHT asked the CI if he/she could put "his team onto something." The CI understood CARTWRIGHT'S comments to mean that he was interested in committing a robbery of narcotics, specifically, a home invasion robbery. During this unexpected meeting, CARTWRIGHT told the CI that he was a "Bloods" gang member and that he "calls the shots" in Philadelphia. CARTWRIGHT and the CI exchanged cellular telephone numbers during the meeting. The CI told CARTWRIGHT that he/she might have "something," referring to a potential home invasion robbery of drugs for him.

6. My independent investigation has revealed that CARTWRIGHT resides at 920 N. 63rd Street, Apartment 3 Rear, and is currently on federal supervised release. CARTWRIGHT

˜2˜

was convicted of possession with intent to distribute cocaine base ("crack") in violation of 21 U.S.C. Section 841(a), possessing a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C Section 924(c), on March 1, 2003 in the Eastern District of Pennsylvania under Criminal Number 01-190, and was sentenced to 129 months imprisonment and three years of supervised release.

7. A few days after the events described in paragraph 6 above, the CI received a telephone call on his/her mobile phone from CARTWRIGHT. During this conversation, CARTWRIGHT described a home invasion robbery of marijuana that he and his team had recently committed. CARTWRIGHT told the CI that he "ran up in a house" and took 10 pounds of "weed," that is, marijuana. CARTWRIGHT told the CI that he took the knife off of his AK [AK-47 assault rifle] and stabbed the victim with it. This call was unmonitored; however, your affiant confirmed the phone call on the CI's call log.

8. On or about September 9, 2013, in response to a missed call from CARTWRIGHT, your affiant monitored and recorded a conversation between the CI and CARTWRIGHT. During this conversation, CARTWRIGHT stated, "So many are on go but I can't take everybody," and "they all seasoned vets, no young boys," which the CI understood to mean that CARTWRIGHT had an experienced team prepared to commit the robbery of the drug dealer that they had discussed previously. CARTWRIGHT told the CI that he was "in the crib" cleaning his "new toy" which CARTWRIGHT described as a "PT 50, .40 caliber."[1] CARTWRIGHT told the CI that "we all have 'Glizzies,'" a street term referring to Glock firearms. CARTWRIGHT told the CI that he and his team have "all put in work in that same type of

---

[1] Your affiant knows that a PT 50 is a model name for a Taurus pistol.

situation" and that CARTWRIGHT has them practicing. The CI understood CARTWRIGHT's statement to mean that he and his team have previously committed home invasion robberies of drugs and that they practice committing these robberies.

9. On September 12, 2013, the CI called CARTWRIGHT and informed him that the CI's "folks" would be in Philadelphia sometime the following week, referring to the UC posing as a drug courier, and asked CARTWRIGHT if he wanted to meet with his/her "folks" to discuss a potential robbery. CARTWRIGHT agreed to meet with the UC and suggested that the meeting take place at CARTWRIGHT's house to make the UC "feel comfortable."

10. On September 16, 2013, the CI and the UC met with CARTWRIGHT on the 900 block of N. 63rd Street in West Philadelphia. During the meeting, the UC described the details of the purported stash house that would contain approximately 10 kilograms of cocaine and asked CARTWRIGHT if this was something that he and his crew could do, to which CARTWRIGHT replied, "alright, you can take me there now." CARTWRIGHT also stated, "we got K's [AK-47 assault rifles] and vests....we going in on some army shit." During the conversation, CARTWRIGHT told the UC not to worry because CARTWRIGHT and his accomplices would "kill everybody." CARTWRIGHT told the UC that he and his associates had three "joints" [firearms]; two "40's" [.40 caliber pistols] with "ladders" [extended magazines]. Also during this meeting, the UC informed CARTWRIGHT that he/she expected to receive one or two kilograms of cocaine from the home invasion robbery and that CARTWRIGHT and his accomplices would take the rest. CARTWRIGHT then told the UC that he knew someone who might buy all of the cocaine for the right price.

11. During this meeting with the UC, CARTWRIGHT placed a call on this cellular telephone to a male later identified as Tyree SCOTT, telling him to come out onto his [SCOTT's]

porch. SCOTT then came outside, onto the front porch of 926 N. 63rd Street. The UC was introduced to SCOTT and again told CARTWRIGHT and SCOTT the details regarding a stash housed that contained a large quantity of cocaine. SCOTT actively participated in the conversation and asked the UC "who can't we hit? [shoot]?" SCOTT told the UC that their team would steal any firearms as well as the cocaine. SCOTT stated, "we need straps [firearms], we need everything." Both CARTWRIGHT and SCOTT discussed using an "AK" [AK-47 assault rifle] during the home invasion and decided that their third accomplice would carry the rifle. Before this meeting concluded, the UC asked CARTWRIGHT and SCOTT to let the CI know if they decided against committing the home invasion robbery. Both CARTWRIGHT and SCOTT confirmed that they were interested in committing the home invasion robbery and that they had been waiting to meet the UC to discuss the details. This entire conversation took place on the porch located at 926 N. 63rd Street, which is three houses down from CARTWRIGHT's residence, at 920 N. 63rd Street, Apartment 3 Rear.

12.     On September 25, 2013, the CI unexpectedly met CARTWRIGHT and an unidentified male outside of a pizza shop in West Philadelphia. CARTWRIGHT introduced the unidentified male as the third male who would be participating the home invasion robbery. The unidentified male asked the CI how soon the home invasion robbery would occur and stated that CARTWRIGHT and his accomplices were waiting to get the call from the CI regarding the home invasion robbery.

13.     On October 3, 2013, the CI and the UC met with CARTWRIGHT at a retail store parking lot in Philadelphia. During this meeting, the UC asked CARTWRIGHT if he and his team were still interested in committing the home invasion robbery. CARTWRIGHT told the UC that he was "going in killing," and stated, "I am shooting at everything I can shoot, I'm taking

-5-

everything." CARTWRIGHT also read a text message he received from "my man Ree," referring to SCOTT, in which SCOTT tells CARTWRIGHT to let him know when the home invasion is to occur.

14. During this meeting, CARTWRIGHT directed the CI and UC to travel with him to the block on which CARTWRIGHT sells heroin, cocaine, and crack cocaine. While on the block that CARTWRIGHT identified as his, he pointed out several males, whom he identified as being "Bloods" gang members, who sold drugs for CARTWRIGHT. CARTWRIGHT told the UC that the cocaine he plans to take from the home invasion robbery would be sold on the block.

15. On October 21, 2013 the CI and the UC met with CARTWRIGHT on the 900 block of N. 63rd Street, Philadelphia. During this meeting, the UC informed CARTWRIGHT that the home invasion robbery would occur later that week. CARTWRIGHT told the UC that he "just bought an Uzi" and that he would be using that as well as an AK-47, and three bullet proof vests during the commission of the home invasion robbery. CARTWRIGHT explained to the UC that he would follow the UC into the house and that he was "going in there shooting." In reference to the occupants of the stash house, CARTWRIGHT stated that "they don't have no time to do nothing when that 'K' [AK-47] and that 'U' [Uzi] start letting off. They gonna get low. They ain't gonna give a fuck about shooting back."

16. During the meeting, the UC asked CARTWRIGHT if his team was ready. CARTWRIGHT told the UC that he was just "on the porch" with him [SCOTT], who asked CARTWRIGHT when the home invasion would occur. CARTWRIGHT then explained that the third person committing the home invasion would be SCOTT'S cousin, an unidentified male. Later during the meeting, CARTWRIGHT again told the UC that he planned to sell the cocaine taken from the home invasion robbery. CARTWRIGHT later told the UC "It's a go!" expressing

his interest in committing the home invasion robbery. CARTWRIGHT told the CI to pick his team up at his [CARTWRIGHT's] house the morning that the home invasion would occur. Just prior to this meeting, I personally observed CARTWRIGHT leave the front door of 920 N. 63rd Street and walk to meet the UC and CI. At the conclusion of CARTWRIGHT's meeting with the UC and the CI, I observed CARTWRIGHT enter the front door of 920 N. 63rd Street.

17. Based on my experience and training, I know that an attempt or conspiracy to violate the Hobbs Act, 18 U.S.C. § 1951, satisfies the requirement that it "affects interstate commerce" if the object of the attempt - in this case the theft of cocaine - would satisfy the interstate commerce requirement, if the conspiracy or attempt were to succeed. See United States v. Jannotti, 673 F. 2d 578, 591-592 (3d Cir. 1982). I also know that cocaine affects interstate and foreign commerce. See 21 U.S.C. § 801(3).

18. On October 24, 2013, at approximately 7:40 a.m., at ATF's direction, the CI drove to West Philadelphia in the UC's vehicle, a large SUV, to pick up Jeron CARTWRIGHT, and Tyree SCOTT, per CARTWRIGHT'S request in a conversation during a meeting on October 21, 2013 and drive them to meet the UC. When the CI picked up CARTWRIGHT and SCOTT on the 900 block of North 63rd Street, CARTWRIGHT walked to the vehicle carrying a green bag. When CARTWRIGHT arrived at the vehicle, he took out a Taurus semiautomatic pistol, showed it to the CI, returned to the green bag, and placed the green bag containing the pistol inside a compartment behind the back seat. When SCOTT arrived moments later, he took out a Glock semiautomatic pistol from his waist area in front of the CI, and placed the pistol on top of the green bag inside the same compartment. The CI then drove CARTWRIGHT and SCOTT to meet with the UC and the CI in a parking lot of a hotel in southwest Philadelphia, Pennsylvania, in the Eastern District of Pennsylvania. The UC directed CARTWRIGHT, and SCOTT, to

another location in Southwest Philadelphia to wait for the phone call purportedly advising them of the location to be robbed.

19. At approximately 9:00 a.m., ATF Special Agents arrested CARTWRIGHT, and SCOTT in Southwest Philadelphia. After the defendants were arrested, ATF Special Agents recovered, from the UC's vehicle a Taurus Millennium Pro Model PT 140 .40 caliber semiautomatic pistol loaded with ten rounds in the magazine and one round in the chamber, bearing serial number SXG 01718. Agents also recovered from the vehicle, a Glock Model 30S .45 caliber semiautomatic pistol loaded with 13 rounds in the magazine and one round in the chamber, bearing serial number ULF 747. Agents recovered both firearms inside the compartment behind the back seat inside the UC's vehicle. Agents also recovered from each of the robbers, CARTWRIGHT and SCOTT, a black mask, and a black pair of gloves.

20. After CARTWRIGHT was arrested, agents advised him of his Miranda rights, and CARTWRIGHT waived them and agreed to speak with the agents. CARTWRIGHT admitted that he intended to rob a drug dealer that morning of cocaine. CARTWRIGHT further admitted that he brought with him the Taurus .40 caliber pistol to rob the drug dealer. CARTWRIGHT added that SCOTT brought with him the other gun to do the same thing.

21. Based upon these facts, I assert there is probable cause to believe that Jeron CARTWRIGHT, and Tyree SCOTT:

(a) have attempted to commit a Hobbs Act Robbery, in violation of 18 U.S.C. § 1951 and 2; and

(b) have used and carried, and have aided and abetted the use and carrying, of firearms during and in relation to a crime of violence (a violation of 18 U.S.C. § 1951) for which they may be prosecuted in a Court of the United States, in violation of 18 U.S.C. § 924(c).

Accordingly, I respectfully request that a warrant for the arrest of Jeron CARTWRIGHT and Tyree SCOTT, be issued by this Court.

*Sarah O'Reilly* (signature)
Sarah O'Reilly
Special Agent
Bureau of Alcohol, Tobacco, Firearms and Explosives

Sworn to and subscribed before me
this 24th day of October 2013

*Lynne A. Sitarski* (signature)
HONORABLE LYNNE A. SITARSKI
UNITED STATES MAGISTRATE JUDGE